UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

XYZ CORPORATION,

    PLAINTIFF,

V.

THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,

    DEFENDANTS.

CASE NO.: 1:25-CV-06084

## COMPLAINT

Plaintiff, ▮▮▮▮▮▮ doing business as ▮▮▮▮▮▮ ("▮▮▮▮▮▮" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Identified on Schedule A, attached hereto (collectively, "Defendants"), which use at least the online marketplace accounts and/or ecommerce stores listed therein ("Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338, and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Illinois and within this Judicial District. Each Defendant has sold a product which infringes on Plaintiff's copyrights into this Judicial District.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since each Defendant directly targets consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the online marketplace accounts identified in Schedule A. Each Defendant commits tortious acts, engages in interstate commerce, and wrongfully causes substantial injury in the State of Illinois.

## JOINDER

4. Joinder is proper pursuant to Federal Rule of Civil Procedure 20(a)(2) as Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all defendants will arise in the action.

5. Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Seller Aliases found to be selling Infringing Products. However, the true identities of the defendants—i.e., the individuals and/or entities operating the Seller Aliases – are not yet known.

6. In Plaintiff's experience, a significant number of Seller Aliases included in the Schedule A are operated by the same individual and/or entity. It is not until the third-party marketplaces produce the registration data for these stores that the Plaintiff will discover the identity or identities of the individuals and/or entities operating the online marketplace accounts under the Seller Aliases.

7. Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individual and/or entity, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8. This action has been filed to combat the online copyright infringement activity of Defendants, who trade upon Plaintiff's valuable copyrights by selling and/or offering for sale products in connection with Plaintiff's federally registered copyrights (the "Infringing ▮ Products").

9. Plaintiff is the owner of various copyright registrations covering original artwork created by ▮ These registrations are attached hereto as **Exhibit 1** (hereinafter referred to as "▮ Copyrights").

10. In an effort to illegally and deceptively profit from the ▮ Copyrights, Defendants created numerous online marketplace accounts and online stores which use the ▮ Copyrights in the marketing and promotion of the Infringing ▮ Products.

11. Plaintiff is forced to file this action to combat Defendants' ongoing infringement of Plaintiff's ▮ Copyrights. Plaintiff has been and continues to be irreparably damaged through loss of control over the creative content and loss of exclusivity over the copyrights, among others, as a result of Defendants' actions, and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

12. ▮

13. ▮

3

█████████████████████████████████████ (the "██████ Products") █

██████ The following are examples of genuine ██████ Products:

**AUTHENTIC PRODUCT EXAMPLES**

[redacted image]

14. Plaintiff is the only authorized seller of ██████ Products which are exclusively available in Plaintiff's stores and e-commerce platforms.

15. ████████████████████████████████████████████████████████████████████████████████████████████████████████

16. ██████ has invested substantial time, money, and effort in developing, advertising and promoting the ██████ Products and ██████ Copyrights.

17. Part of the success of ██████ Products has come from the care and time put into creating each individual piece of art. Given the effort required to create the ██████ Products, they are sold at a considerable price point, generally between ██████.

18. ██████ has made efforts to protect █ interests in and to the ██████ Copyrights and Products. Plaintiff is the only authorized seller of ██████ Products and the exclusive owner of the ██████ Copyrights. Plaintiff has not licensed or authorized Defendants to use the ██████ Copyrights.

4

**THE DEFENDANTS**

19. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Each Defendant targets the United States, including Illinois, and has offered to sell and has sold and continues to sell Infringing ▬▬▬ Products to consumers within the United States, Illinois, and this Judicial District.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

20. ▬▬▬ Products are being significantly copied and infringed online. Plaintiff has identified numerous websites and marketplace listings on platforms which include, but are not limited to those operated by: Amazon, Inc. ("Amazon"); Fruugo.com ("Fruugo"); Shopify, Inc. ("Shopify"), and Walmart, Inc. ("Walmart"), among others (collectively referred to herein as "Online Marketplaces"), including the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $509 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[1] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

21. As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above-mentioned digital marketplaces, an

---

[1] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[2]

22. Upon information and belief, Defendants facilitate sales by using the ▮▮▮▮ Copyrights in connection with the offer for sale and sale of cheap, inferior products meant to appear as authentic ▮▮▮▮ Products. Consumers end up purchasing these Infringing ▮▮▮▮ Products without knowing that they are inauthentic copies of the original artwork.

23. Upon information and belief, Defendants operate in a collective and organized manner, often monitor intellectual property infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other—utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[3] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

24. Upon information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed on

---

[2] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.
[3] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

Schedule A, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are some of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) similarities of the Infringing ▅▅▅▅▅▅ Products, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated; and, (3) other notable common features such as use of the same registration patterns, identically or similarly priced items and volume sales discounts, similar hosting services, and the use of the same text and images.

26. Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through platforms such as PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), and Stripe, Inc. ("Stripe") (collectively referred to herein as "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, and upon information and belief, and as financial transaction logs in previous similar cases have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

27. Defendants, without any authorization or license, have knowingly and willfully infringed the ▅▅▅▅▅▅ Copyrights in connection with the advertisement, distribution, offering for sale, and sale of illegal, and infringing products into the United States and Illinois. Each

7

Defendant Internet Store offers to ship to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell, or has already sold, Infringing Products therein.

28. In committing these acts, Defendants have, among other things, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to ▇▇▇ and ▇▇▇▇▇ business: infringed upon and copied the ▇▇▇▇ Copyrights; created, manufactured, sold, and/or offered to sell Infringing Products and/or products which infringe upon the ▇▇▇▇ Copyrights; and unfairly and unjustly profited from such activities at the expenses of ▇▇▇▇.

29. Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Infringing Products. Upon information and belief, Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Copyrights and the sale of Infringing Products. Defendants have a direct financial interest in, and gain a direct financial benefit from, infringing activity and realize profits from the sale of Infringing Products.

30. By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, each Defendant also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

31. Unless enjoined, Defendants will continue to cause irreparable harm to ▇▇▇▇.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

32. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

33. The ▮▮▮▮▮ Copyrights are the subject of multiple valid copyright registrations.

34. Plaintiff, at all relevant times, has been the holder of the copyright registrations and the exclusive rights of and belonging to ▮▮▮▮▮ including but not limited to the ▮▮▮▮▮ Copyrights.

35. These copyrights have significant value and have been produced and created at considerable expense.

36. Upon information and belief, Defendants had access to the copyrighted work through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent, and engaged in, and continue to engage in acts of widespread infringement.

37. Each Defendant, without the permission or consent of the Plaintiff, has sold, and continues to sell Infringing Products using Plaintiff's Copyrights. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §501 *et seq*.).

38. Further, as a direct result of the Defendants' acts of copyright infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Copyrights. Plaintiff is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to said infringement.

39. As a result of each Defendant's infringement of Plaintiff's exclusive rights under U.S. Copyright Law, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

40. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law. As such, pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's Copyrights, and ordering that each Defendant destroy all unauthorized and/or infringing copies and reproductions of Plaintiff's Copyrighted works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the ▮▮▮▮ Copyrights or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized ▮▮▮▮ Product, or is not authorized by Plaintiff to be sold in connection with the ▮▮▮▮ Copyrights;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ▮▮▮▮ Copyrights;

   c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the ▮▮▮▮ Copyrights, or which are derived from the ▮▮▮▮ Copyrights;

    d. further infringing the ▮▮▮▮ Copyrights and damaging Plaintiff's goodwill;

    e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendant product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the ▮▮▮▮ Copyrights or which are derived from Plaintiff's ▮▮▮▮ Copyrights;

    f. operating and/or hosting websites at the Defendant Internet Stores, and any other domain names registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the ▮▮▮▮ Copyrights, or which are derived from Plaintiff's ▮▮▮▮ Copyrights;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the ▮▮▮▮ Copyrights;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the ▮▮▮▮ Copyrights, or which are derived from the ▮▮▮▮ Copyrights; and,

11

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. §501; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages pursuant to 17 U.S.C. §504, at the election of Plaintiff;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7) Any and all other relief that this Court deems just and proper.

Dated: May 30, 2025              Respectfully submitted,

*/s/ John J. Mariane*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
j.mariane@scip.law

***ATTORNEYS FOR PLAINTIFF***